In the Matter of Kenneth Wayne
URQUHART, Bankrupt.
FRED GORGES LINCOLN–MERCURY,
INC., a Corporation, Appellant,
v.
Kenneth Wayne URQUHART, Bankrupt,
Appellee.
Nos. 19931, 19966.

United States Court of Appeals,
Eighth Circuit.
May 19, 1970.

As Amended on Denial of Rehearing
July 16, 1970.

William L. Howland, of Krause & Howland, Lincoln, Neb., for appellant.

Donald R. Hays, Lincoln, Neb., for appellee.

Before MATTHES, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

The district court, the Honorable Robert Van Pelt, entered an order approving the Referee in bankruptcy's findings restraining Fred Gorges, Lincoln-Mercury, Inc. [hereinafter Gorges], from further proceedings in the state courts, in aid of execution of its judgment against its debtor, Kenneth Wayne Urquhart, on the grounds that the particular debt had been discharged in bankruptcy proceedings along with Urquhart's other provable debts on April 2, 1968.[1] This appeal followed. We affirm.

The facts may be briefly summarized. The debtor owed the creditor-corporation approximately $1,750 and was in default of payment. Suit was filed in Municipal Court in Lincoln, Nebraska,

1. Acting upon debtor's petition to the district court, Judge Van Pelt reopened the bankrupt's estate on January 23, 1969. The matter was then referred to the Referee in bankruptcy, the Honorable Jerrold L. Strasheim, for further disposition. On January 27, 1969, the Referee entered a temporary restraining order against the creditor, Gorges. Following several motions in response to this order, the district court appointed Judge Strasheim as a Special Master.

After a hearing, Judge Strasheim, acting as Special Master and Referee entered his memorandum decision, evidenced by a scholarly and very thorough discussion of the law. Motions to review the memorandum were denied; he entered an order permanently enjoining the creditor on May 28, 1969, and causing the return of money garnished by the creditor. This order and the Special Master's report were affirmed by the district court on August 18, 1969.

on May 4, 1967. On December 29, 1967, the debtor filed a voluntary petition in bankruptcy. On this same day, the judgment on the debt was entered in municipal court in favor of the creditor-corporation. Further proceedings in state court were at that time stayed upon the debtor's filing of suggestions in bankruptcy.

In his bankruptcy petition, Urquhart listed the municipal court judgment, along with its docket and page number, and recorded the creditor as "Fred Gorges, c/o Joseph Krause, Attorney at Law, 1620 "M" Street, Suite 6, Lincoln, Nebraska 68508." Krause was the attorney of record in the municipal court proceedings and, in addition, served as secretary of the creditor-corporation. Written notice of the pending bankruptcy proceedings was sent to the above stated address.[2] There is no question that Joseph Krause did in fact receive this notice; this was readily admitted at oral argument.

According to the creditor's counsel at oral argument, because of the debtor's failure to properly list the creditor as a corporation on the bankruptcy schedule, the creditor visualized a method of avoiding the effect of a bankruptcy discharge on its outstanding judgment and the subsequent sharing with the other general creditors. With this in mind, the creditor-corporation failed to file its claim in the bankruptcy proceeding. Following the closing of the bankruptcy estate, the creditor filed a motion in municipal court seeking to set aside the stay. The bankrupt filed an objection on the basis of his discharge. After several continuances, and a hearing which was not attended by debtor, the stay was set aside on October 31, 1968. This order was not appealed from.

In January 1969, garnishment proceedings, based on the judgment, were then started. A total of $365.26 was collected under this proceeding. Thereafter, the bankrupt requested the federal district court to reopen the bankruptcy proceedings and sought an injunction against the creditor-corporation and further garnishment proceedings.

■ Both parties agree the controlling issue is one of jurisdiction. It is agreed that only the bankruptcy court can determine whether the debtor has a *right* to a discharge. However, the creditor urges that the *effect* of that discharge as to a particular debt may be subsequently litigated in any forum, the theory being that the debtor will be protected by having the remedy of pleading the discharge to such a prosecution. See 1 Collier on Bankruptcy, ¶ 17.28 (14th ed. 1969).

■ Nevertheless, it is well settled that the bankruptcy court may decide the effect of the discharge, and at the same time stay the state court proceeding. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Such an assumption of jurisdiction is based on equitable principles designed to allow the debtor to make a fresh start and at the same time give viability to the discharge. See also Poolman v. Poolman, 289 F.2d 332 (8 Cir. 1961); White v. Public Loan Corp., 247 F.2d 601 (8 Cir. 1957). It is to be exercised, however, only under "unusual circumstances." 292 U.S. at 241, 54 S.Ct. 695.

The test for when "unusual circumstances" are present has been stated in very general terms, the effect of which has left the courts to determine this issue on a case-to-case basis. Instances have been when the debtor is being harassed and subject to unreasonable financial burdens, Local Loan Co. v. Hunt, supra; when the state court passing on the issue of discharge is not a court of record, State Finance Co. v. Morrow, 216 F.2d 676 (10 Cir. 1954); when further state proceedings will seriously jeopardize the debtor's job, Poolman v. Poolman, supra; and when it appears to the bankruptcy court, on the face of the

2. The corporation's address in the municipal court proceedings was listed as above. The corporation, prior to the time judgment was obtained, closed its Nebraska operations and Krause was its only listed agent.

record, that there was no basis for the state court suit, In re Tel-A-Sign, Inc., 415 F.2d 1334 (7 Cir. 1969).

■ The Referee in bankruptcy and the district court both found that "unusual circumstances" existed in this case. We agree. The debtor, who had evidently just been freed of his financial obligations, was otherwise required to face further, and probably extensive, litigation. His wages, which were subject to garnishment, would in all probability place his continued employment in jeopardy. As was acknowledged by both the Referee and the district court, the alleged deficiency as to the notice is highly technical and the creditor's theory deserves little equitable consideration. Cf. Holmes v. Rowe, 97 F.2d 537 (9 Cir. 1938). In addition, the record fully justifies the Referee's finding that there has been "overreaching and harassment." To allow the recovery for the creditor in this case would constitute a gross miscarriage of justice.

The creditor urges that the bankrupt is precluded from raising the effect of his discharge by reason of the prior adjudication in the municipal court. This argument assumes that jurisdiction under 11 U.S.C.A. § 11, as defined by *Local Loan,* must yield to res judicata or collateral estoppel [3] arising from a non-bankruptcy court decision. We need not, here, enlarge upon the existing case law interpreting *Local Loan.* See Hilton Credit Corp. v. Jaggli, 366 F.2d 793 (9 Cir. 1966). See also 1B Moore's Federal Practice, ¶ 0.419[3–4], pp. 3051–3057. The creditor's reliance upon res judicata in the instant case is factually misplaced.

■ The doctrine of res judicata serves as a bar to the same cause of action being litigated between the same parties. The cause sued upon in the municipal court arose from a debt on a contract. The subsequent stay order in that court, and the motion to set aside the same, affected only the finality of the judgment previously obtained and did not determine whether the judgment was within one of the excepted debts not discharged under the Act. 11 U.S.C.A. § 35. On the other hand, the ancillary proceeding subsequently commenced in the bankruptcy court related directly to the effect of the discharge as a bar to the enforcement of the judgment-debt. Clearly, the same cause of action was not involved in the two proceedings and the doctrine of res judicata cannot apply.

■ Nor can the creditor rely upon the rule of issue preclusion in contesting the bankruptcy court's restraint of the garnishment proceedings.[4] Under the doctrine of collateral estoppel, a judgment in a prior suit precludes, in a subsequent suit, relitigation of issues adjudicated even though the cause of action may differ in the second suit. See Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). However, applying the law dealing with issue preclusion, it is clear

3. But cf. Holmes v. Rowe, supra; State Finance Co. v. Morrow, supra; Personal Industrial Loan Corp. v. Forgay, 240 F. 2d 18 (10 Cir. 1956); General Protestant Orphans' Home v. Ivey, 240 F.2d 239 (6 Cir. 1956); In re Johnson, 323 F.2d 574 (3 Cir. 1963).

4. We stated in Towle v. Boeing Airplane Co., 364 F.2d 590, 592 (8 Cir. 1966):
"The term res judicata is frequently used to cover merger, bar, collateral estoppel and direct estoppel. See Lawlor v. National Screen Service, 349 U.S. 322, 326, n. 6, 75 S.Ct. 865, 99 L.Ed. 1122. Here, as in Engelhardt v. Bell & Howell Co., 8 Cir., 327 F.2d 30, we

adopt Professor Vestal's more precise and helpful descriptive words of claim preclusion and issue preclusion, which he defines thusly:
'The concept of res judicata, which is not at all a simple one, encompasses at least two distinct facets. For the sake of clarity it is desirable to distinguish the foreclosing of further litigation on a cause of action (which may be called claim preclusion) from the preclusion of further litigation of an issue (which may properly be called issue preclusion).' Vestal, Preclusion/Res Judicata Variables, April 1965 issue Washington University Law Quarterly, p. 158."

upon the present record that the municipal court in removing its earlier stay order adjudicated nothing. The record supports only the conclusion that the stay order was set aside because the debtor failed to resist. There was nothing for the municipal court to decide since the judgment had been previously entered, and there was at that time, no ancillary proceeding to enforce the judgment pending. In fact, the initial garnishment proceeding, in aid of execution of the judgment, was not initiated until some two months after the withdrawal of the stay in municipal court. Under these circumstances, the effect of the discharge was not legally relevant to the order dissolving the stay. See General Protestant Orphans' Home v. Ivey, supra.

The Referee and the district court both felt that the creditor's procedure "smacks of overreaching and harassment." We agree. Attorney Krause wore two hats: secretary of the creditor-corporation and attorney in the municipal court proceedings. As acknowledged by his co-counsel in oral argument on appeal, Krause knew of the bankruptcy proceedings and the faulty scheduling of the Gorges claim. Notice for filing claims was mailed to him by the Referee in bankruptcy. The bankruptcy petition revealed the case name and docket number wherein the creditor's judgment was listed. Any reasonable person would know the notice sent to Krause as attorney and officer for the corporation involved the corporation's judgment in municipal court, notwithstanding the fact that Gorges' name was listed as an individual and not as a corporation. Counsel for creditor candidly admitted that at the time notice was received, a plan was conceived in which to avoid the effect of the bankruptcy discharge and later seek enforcement of the whole judgment against the debtor using the deficiency of the notice. Such a plan not only overlooks fair dealing, but also slights the integrity of a discharge order of the bankruptcy court. Counsel was obligated to know that any actual knowledge

of the bankruptcy proceeding was a bar to further collection. See 11 U.S.C.A. § 35(a) (3).

Under the circumstances, we find, upon the basis of the Referee's finding of "overreaching and harassment" by the creditor that attorney fees should be allowed in this court. The bankrupt is awarded $250.00 in attorney fees in this court.

Judgment affirmed.